STATE *ex. rel.* JACK E. SYPHERS, *et als.*

*v.*

HARRY B. McCUNE, *et als.*

(No. 10928)

Submitted November 26, 1958. Decided February 10, 1958.

*W. F. Keefer, Joseph R. Curl,* for relators.

*Gilbert Bachmann, Jay T. McCamic,* for respondents.

DUCKER, JUDGE:

This is an original proceeding in mandamus in which Jack E. Syphers, Franklin P. McMillen, W. Frank Keefer and Joseph R. Curl, (the said W. Frank Keefer and Joseph R. Curl subsequently moving for leave to withdraw), as petitioners, filed their petition praying that they be awarded a writ directed to the respondents, Harry B. McCune as Chairman of the board of directors and Ross T. Carnes as president and as a member of the Board of Directors of Co-Operative Transit Company, a West Virginia corporation, Edward Wright, O. L. Myers and John H. Moore as members of the board of directors of said corporation, to take proper steps to reconvene a meeting of the stockholders of said corporation which was held on February 20, 1957, or to call a special meeting of the stockholders of said corporation to receive and act upon the various matters alleged in their petition and hereinafter shown. The respondents filed a demurrer and an answer to the petition, and petitioners demurred to respondents' answer. The parties stipulated that the facts alleged in the petition were true except where denied in the answer.

The uncontradicted and undenied principal facts as shown by the petition are: that the petitioners, Jack E. Syphers and Franklin P. McMillen, are the owners and holders of one and five shares respectively of the common stock of said Co-Operative Transit Company and that said Syphers and McMillen, with W. Frank Keefer and Joseph

R. Curl, the latter two being attorneys at law, hold proxies and powers of attorney from a number of other stockholders of said Transit Company, aggregating 834 shares of common stock and 475 shares of preferred stock, which proxies are votable by all or any one or more of the petitioners, and that the petitioners are instituting this proceeding in behalf of themselves and those stockholders whose proxies petitioners hold; that the individual respondents herein are, as indicated, the officers of the corporate respondent herein and that at the stockholders' annual meeting of the Co-Operative Transit Company, held on February 20, 1957, at its principal office in the City of Wheeling, West Virginia, pursuant to notice, Keefer and Curl were excluded from the meeting and denied the right to act as proxies for any stockholders at said meeting on any matter coming before said meeting and particularly in the matter of the election of directors; that in accordance with the by-laws of the company only two instead of five directors were to be elected and that the respondents allowed only the petitioners, Syphers and McMillen, to be present at the meeting and then only to vote the common stock which they owned or for which they held proxies, and only to cast their votes by voting one vote for each share for each of two candidates or to cumulate shares which they owned or for which they held proxies by casting two votes for each share for one candidate, and that consequently petitioners could not elect a single director although they could have done so if five directors had been elected and if the petitioners could have cumulated their votes and cast five votes for each of the shares for which they owned or held proxies; that the charter of the corporate respondent provides for the issuance of both common and preferred stock with voting rights only in the common stock; that the by-laws of the corporate respondent provide for five directors, two of whom shall be elected in one year, two in two years thereafter and one in four years thereafter, each to serve for six years except that the respondents H. B. McCune and R. T. Carnes shall, without election, be directors respectively, one for ten years and

the other for fifteen years after June 27, 1950, by virtue of contracts made between said individual respondents and the corporate respondent; that the respondents in their action in said meeting relied upon a provision of the by-laws of the corporate respondent which permitted only stockholders to hold and exercise proxies for other stockholders and then only after filing their certificates of stock with a proxy committee; that at said meeting on February 20, 1957, petitioner Syphers moved and submitted in written form resolutions containing, where necessary, amendments to the by-laws of the corporate respondent to the effect (1) that the terms of all directors be declared at an end and that a whole new board of directors consisting of five directors be elected to hold office until the next annual meeting, or until their successors are elected and qualify; (2) that every stockholder, both common and preferred, present in person or by proxy, be allowed to vote for directors by use of the cumulative method of voting as authorized in the constitution and statutes of the State of West Virginia; (3) that the corporate respondent provide for the holding of annual instead of biennial election of directors; (4) that five directors be elected annually; (5) that there be repealed the by-law provision requiring that only a stockholder can be the proxy of another stockholder; and (6) that several other by-law and charter provisions of the corporate respondent incidental to petitioners' claims be amended so as to give eligibility to stockholders for election to membership on the board of directors and limitations upon the ownership of stock participation in the corporate meetings, there being at present a requirement that stockholders may be only those who are employees or officers of the corporation, or persons formerly so classified; but said McCune as the presiding officer at said meeting refused to entertain said motions, except to say he was acting in accordance with the by-laws and would later submit the proposals to counsel for the company for advice.

The respondents by their demurrer and in their answer admit the principal allegations of fact contained in the

petition, but in the answer deny the conclusions of law asserted by petitioners as well as the allegations that the various charter and by-law provisions of the corporate respondent and the actions of the officers at the said stockholders' meeting were conceived or done with any plan or scheme to deprive any stockholder of his legal rights, but that the same were for the protection of the rights of the stockholders and for the best interests of the corporation, and that all the charter and by-law provisions of the company were as between the corporation and the stockholders contractual in their nature and accordingly legal.

The answer of the respondents recites in detail the history and organization of the corporation, disclosing that it was organized by the employees for the acquisition of the assets of the defunct Wheeling Traction Company, which in 1931 was in the hands of Federal Court Receiver, that the employees of that Company, including Carnes, McCune and other employees contributed to a trust fund with which such assets were purchased and this corpration organized and the employees retained in their employment; that because of the difference in the value of the old street car company and the bus company assets, due to separate contingent potential liabilities, the corporate respondent created two segregated units for the issuance of stock in common and preferred classes to equalize the respective equities which the subscriber employees should have and to perpetuate such ownership, and that the respondent's corporate charter and by-law provisions that a stockholder must be the owner of five shares and must have had ten years of service with the corporation or its former subsidiaries in order to be eligible for election as a director are reasonable restrictions and contractual in nature and not violative of any law, and that the corporation's contracts with Carnes and McCune were to procure their services considered valuable because of their long experience in the management of the affairs of the company.

Although the respondents by their demurrer and answer have raised numerous specific grounds, the controlling

questions presented and necessary for our decision of this case in determining whether the petitioners are entitled to a writ of mandamus as prayed for are reducible to these, namely, (1) whether the petitioners, either in their own right or by the proxies which they hold as agents for other stockholders, can maintain this proceeding; (2) whether both common and preferred stock can be voted for directors of the corporate respondent, including the right to vote by cumulative method; (3) whether the terms of office of directors can be staggered by the election of less than the whole number of directors at any meeting of stockholders, and incidentally may such election be held only biennially and only stockholders holding at least five shares and ten years' service eligible for election; (4) whether stockholders can be restricted in their right to vote by providing that only stockholders may act as proxy for other stockholders; and (5) whether the contracts entered into between the corporate respondent and Carnes and McCune, insofar as the same in effect elect the latter as directors of the corporation, are valid. We do not consider the questions incidental to the above principal questions or other matters alleged as sufficiently pertinent to the relief sought to require decision in this proceeding. Those questions may depend upon the reasonableness and future actions in the matter.

As to the contentions of respondents that the petitioners cannot maintain this proceeding because the petitioners, in proxies which they hold, disclose their principals, and therefore they cannot maintain this suit in their own names for those they represent, the withdrawal by Keefer and Curl, who are not stockholders, has eliminated them as to their representation as agents of the stockholders whose proxies were held by them jointly and severally with Syphers and McMillen, but the question of Syphers and McMillen suing for the benefit of the disclosed principals may still remain. However, the petitioners, Syphers and McMillen, are suing in their own names for their own benefit as well as for those whom they represent by proxy, and as to such petitioners the alleged incapacity

does not preclude the petitioners from maintaining this suit, as said two petitioners are proper parties to a suit here affecting their own personal rights.

Respondents further contend that the petitioners did not exhaust their remedies within the corporation and that mandamus does not lie in this case. As to the exhaustion of remedies available within the corporation, it is difficult to see what else could have been done in petitioners' efforts to obtain or protect their rights. The respondents gave no indication that they would later accede to the requests and demands made by the petitioners at the meeting, and from the facts as shown by the petition and the answer, it is apparent that the respondents rely upon their assertion that they are not required by law to grant the petitioners the relief which they seek. For petitioners to repeat their demands or for them to call or attempt to call a further meeting would be a futility, and, we think, unnecessary. As to mandamus being a proper remedy here, this Court has held that it is a proper remedy to put into office a director who by cumulative voting had been denied the right to serve. The rights claimed in this proceeding are substantially the same in that regard and are sufficient to afford such a remedy. *Cross* v. *West Virginia Cent. & Pa. R'y. Co.*, 35 W. Va. 174, 12 S. E. 1071; *Bailey* v. *Coleman*, 123 W. Va. 510, 514, 16 S. E. 2d 918; *Carter* v. *City of Bluefield*, 132 W. Va. 881, 897, 54 S. E. 2d 747; note paragraph 8, 43 A.L.R. 2d 1337. And as all of the directors and the corporation itself are parties to this proceeding, the necessary procedure for the calling and holding of a proper and legal meeting is within their power and duty, and as sustained by ample authority, is compellable by mandamus. 38 Corpus Juris, page 798, §II and note in 48 A. L. R. 2d 617.

The respondents denied the petitioners the right to vote the preferred stock for which they held proxies, because the charter and by-laws of the corporation gave no voting rights to that class of stock. Respondents contend that the charter, by-laws and provisions of the stock certificates constitute contractual rights between the parties and that

the parties were bound by such terms, and that this case is not similar to the case where a charter had not been issued. The provisions of all charters of corporations issued by the State are subject to the limitations imposed by the Constitution. Article XI, Section 4, provides as follows:

"The Legislature shall provide by law that in all elections for directors or managers of incorporated companies, every stockholder shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock, shall equal, or to distribute them on the same principle among as many candidates as he shall think fit: and such directors or managers shall not be elected in any other manner."

The foregoing constitutional provision is, we think, just as applicable to the one situation as the other, and as this Court has recently held, all stock, both preferred and common, has voting rights, and any provision denying such right to the holder of either class is illegal. *State* v. *O'Brien*, 142 W. Va. 451, 96 S. E. 2d 171. The petitioners were denied their rights to vote the shares of preferred stock for which they held proxies, and consequently the election of directors as held at the meeting of February 20, 1957, was not legal. In this connection also arises the question of the right of a preferred stockholder to cumulate his votes in the election of directors. The determination of his right to vote the preferred stock places it on an equal basis as the common stock for that purpose, for otherwise the provisions of Article XI, Section 4 of the Constitution would have little or no meaning.

The by-laws of the respondent corporation staggered the election of the five directors so that not more than two of the five would be elected at the same time instead of all five being then elected, and this provision of the by-laws was subject to the further claims of McCune and Carnes to be directors according to the terms of their

contracts. So during the periods provided in the contracts of McCune and Carnes with the corporation, there could be only three other directorate positions to be filled, and not more than two of them at the same time. Regardless of the motives or purposes of the management of the corporation, or whether such by-law provisions have proved beneficial, it is readily observable that such limitation gives a majority of the stockholders the power to elect all directors of the corporation with no power in a lesser percentage of the votes to elect a single director, and thus deprives entirely the minority of representation on the board and a voice in the management of the affairs of the company. As stockholders have the right to vote cumulatively, a plan which prevents the full enjoyment of that right is, to that extent, an effectual and substantial denial of the right and illegal. Accordingly, we are of the opinion that the stockholders had the right to vote on all five positions of directors of the corporation, and they could not be limited to the selection of any lesser number. We do not consider the incidental questions which have been raised pertaining to the time of meetings and terms of office as now sufficiently in issue or necessary for determination or adjudication.

The by-laws of the corporate respondent contain the provisions that stockholders can only vote by a proxy who is also a stockholder, thus preventing any person who is not a stockholder from being eligible to represent a stockholder in the meetings of the corporation. Also, there is a requirement that the stock certificate of any person voting by proxy shall be submitted to a committee before any representation of such stock by proxy will be permitted, but we consider this latter requirement as unimportant in the controversy herein. We do think that the law does not warrant a restriction such as is here shown on the right of a stockholder to select his proxy. When the several stockholders are divided in their views as to the selection of directors or managers, the capacity of stockholders to vote their sentiments is by such by-law curtailed or destroyed in whole or in part. It is easy to

conceive a situation where a stockholder, when unable to be present by reason of sickness or necessary absence, would have no other to whom to give his proxy than to one whose views or wishes may be adverse or even hostile to such absent stockholder. The intention of the stockholders that the corporation be considered as a so-called close corporation is hardly sufficient for this restriction to be considered as reasonable, and, too, if full voting rights as provided for in the constitution are to be effective, absent stockholders cannot be so limited. So, a stockholder should not and cannot be bound by such a provision, and is entitled to a free choice of the person to vote his proxy.

Because of the special interests of McCune and Carnes in the respondent corporation, and because of the alleged desire of the corporation to retain and continue to have the benefit of the experience of these two officers and directors, contracts were made by the corporation with them for their services, which contracts included their right to be members of the board of directors for ten and fifteen years respectively after June, 1950. While the record does not disclose whether these contracts were authorized by the unanimous vote of the directors or by a lesser vote, it is not material because there can hardly be an estoppel on the part of anyone if those contracts are illegal. Again this presents the simple question of whether or not they are in derogation or in violation of the constitutional rights of each stockholder to vote for all directors, and particularly that part of the constitutional provision which prevents directors of corporations from being elected in any other way than that so therein provided. The contracts in question perpetuate these two directors in office for the periods of their contracts, and such perpetuation necessarily prevents the election of directors as required by the constitution. We conclude that McCune and Carnes are not by virtue of said contracts lawful directors of said corporation and that their positions on the board are subject, as are all other positions on said board, to election by the stockholders.

We will not at this stage of the affairs of the corporate respondent pass upon the other questions presented by the petition as their validity will largely depend on such future action as may be taken and the reasonableness thereof under the circumstances.

For the reasons given, we are of the opinion and so hold, that the petitioners be awarded a writ of mandamus requiring the respondents to reconvene, after reasonable notice to all stockholders, the meeting of the stockholders of Co-Operative Transit Company which was held on February 20, 1957, and to proceed therein in accordance with the principles laid down herein.

*Writing awarded.*